LONE STAR GAS COMPANY, a Division of Enserch Corporation, Appellant,

v.

Beatrice McGUIRE, Appellee.

No. 5906.

Court of Civil Appeals of Texas, Waco.

Aug. 10, 1978.

Gene C. Jarmon, Robert E. Pritchard, C. Clint Adams, Frank H. Cathey, III, Dallas, for appellant.

Mac L. Bennett, Jr., Bennett & Bennett, Normangee, Michael Thomas, Thomas & Sibley, Dallas, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant Lone Star from $25,000. judgment awarded plaintiff McGuire, in suit for damages to her land.

Plaintiff McGuire sued defendant Lone Star for damages to 45 acres of plaintiff's

land allegedly caused by defendant's employees draining an 18 inch pipeline. Plaintiff alleged negligence in draining the pipeline resulted in salt, oil, gas and chemicals from the line covering 45 acres of her improved pasture, killing the coastal and common bermuda grass and permanently injuring the soil, to her damages of $46,000.

Defendant answered by general denial. Trial was to a jury which found:

1) The damage to plaintiff's land was proximately caused by defendant's negligence on February 9, 1976.

2) $25,000. will reasonably compensate plaintiff for the damage to her land. The trial court instructed the jury " * * * If you find damage to [plaintiff's] land is permanent, then you will find the difference in the reasonable cash market value of her land immediately before the incident and the reasonable cash market value of her land immediately after the incident in question. If you find the damage to her land is temporary, then you will find the cost to restore her land to the condition it was immediately before the incident in question, plus an amount for the loss of use of her land from February 9, 1976 to the present date".

" * * * the term 'Permanent' * * does not mean perpetual or forever, but you are instructed that if you believe * * * the productivity of the soil has been impaired or destroyed, then * * the injury would be permanent in nature * * * the term 'Temporary' * * * means any degree of damage which you find to be less than permanent."

The trial court rendered judgment on such verdict for plaintiff for $25,000.

Defendant appeals on 3 points:

1) "The trial court erred in rendering judgment for plaintiff because the verdict of the jury to special issue number 'one' is against the great weight of the evidence".

2) "The trial court erred in refusing to set aside the verdict of the jury to special issue number 'one' because the verdict of the jury is against the greater of the evidence".

3) "The trial court erred in refusing to set aside the verdict of the jury to special issue number 'two' because the verdict is arbitrary, capricious and without support in the evidence submitted".

Plaintiff owns 154 acres of land in Leon County. The acreage here involved is 45 acres on the north portion of the property, adjacent to and north of a separating plant owned by defendant. A leak developed in defendant's 18 inch line leading to the separator; to repair the leak defendant's employees on February 9, 1976 drained a 3½ mile section of the pipe which had a pressure of over 400 pounds per square inch; drainage was by use of a "blow-off" valve located at the separator; defendant's employee opened the valve "all the way, and never shut it off"; it took 40 minutes to an hour to empty the contents of the line; a brisk wind was blowing from the south; contents of the line, oil, salt water and methane blew onto 45 acres of plaintiff's improved pasture, killing coastal and common bermuda grass; defendant's supervisor Salmon testified defendant's employees did not drain the blow-off valve properly; that proper procedure would have been to open the valve and then close or squeeze it back slowly; Salmon knew substances in the pipeline could damage land; oil, gas and salt water which settled on plaintiff's land was from the pipeline; Salmon told plaintiff's son the land was damaged; that he would get a claim agent out to the location; the black liquid killed all vegetation on 45 acres; 67 head of cattle were in the pasture; and could not be continued there; 25 cows had to be sold at a loss of $100. per cow; the land is a "buoy loam sand soil"; has 6 to 8 inches of topsoil under which is a subsoil level of a clay sand and soil with high iron concentration and has very slow permeation; the salt from defendant's pipeline permeated by leaching through the sand topsoil but is trapped and held tight by the clay at the 6 to 8 inch depth; weeds can grow in the topsoil, but coastal and common bermuda grass have roots 30 to 40 inches long which go into the subsoil level and the

salt kills the grasses; prior to the damage of February 9, 1976 plaintiff's land was worth $600. to $800. per acre, after such damage it is worth $100. per acre; to make coastal bermuda grow again on the property will take $350. to $400. per acre, plus $100. per acre for a period of 5 years.

There is ample evidence to support the jury's answers to Issues 1 and 2, and such findings are not against the great weight and preponderance of the evidence. *In re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660.

Defendant's points are overruled.

AFFIRMED.